Andrews, J.
 

 We understand that it has become the settled
 

 practice in this state that relief against a judgment rendered against a party upon the unauthorized appearance of an attorney in his name is to be sought on a direct application to the court by motion in the action in which the unauthorized appearance was entered. This was the remedy adopted in the leading case of
 
 Denton
 
 v. Noyes, 6 Johns., 297, and in every subsequent case of a like character in this state which has come to our notice.
 
 Grazebrook
 
 v.
 
 McCreedie,
 
 9 Wend.,
 
 437; Adams
 
 v. Gilbert, Id., 499;
 
 Campbell
 
 v. Bristol, 19 Id., 101;
 
 American Ins. Co.
 
 v.
 
 Oakley,
 
 9 Paige,
 
 496; Hamilton
 
 v. Wright, 37 N. Y., 502.
 

 In
 
 Brown
 
 v.
 
 Nichols,
 
 42 N. Y., 31, which was the case of a creditor’s bill founded on a judgment rendered against the defendant’s intestate, the defendant sought to impeach the judgment by proof that the defendant was not served with process, and that an appearance entered for him in the action by an attorney was unauthorized. The court overruled the defense, holding that the authority of the attorney to appear could not be questioned collaterally, but pointed out the remedy, Earl, J., saying: “I think a party should always seek relief for an unauthorized appearance in the suit in which it has been put in, where the rights and equities of all parties can be best protected.” In
 
 Ferguson
 
 v.
 
 Crawford,
 
 70 N. Y., 256, Eapallo, J., referring to the rule established in
 
 Denton
 
 v.
 
 Noyes,
 
 and to the cases following it, said, “for reasons of public policy the court holds the appearance good, leaving the aggrieved party to his action for damages against the attorney, granting relief against the judgment only in a direct application.” See, also,
 
 Sperry
 
 v.
 
 Reynolds,
 
 65 N. Y., 183.
 

 The jurisdiction of a court of equity to set aside a judgment at law obtained by fraud or on other grounds of equitable cognizance has been often asserted and is unquestioned, and it is not necessary now to deny that under special circumstances where the
 
 *72
 
 question of the unauthorized appearance is complicated with fraud, or the rights of purchasers, or the circumstances are such that the court can see that the right to or measure of relief cannot properly be determined on motion, having regard to all interests affected, resort may be had to a bill in equity or now in this state to an equitable action.
 

 There are several cases in other courts where jurisdiction in equity by original bill to set aside a judgment entered on an unauthorized appearance by attorney has been entertained. But all of them are marked by peculiar and special features, such as those to which we have adverted.
 
 Shelton
 
 v.
 
 Tiffin,
 
 6 How., U. S., 163 ;
 
 Harshey
 
 v. Blackmarr, 20 Iowa, 161;
 
 Wiley
 
 v. Pratt, 23 Ind., 628. In
 
 Critchfield
 
 v. Porter, 3 Ohio, 518, the supreme court of Ohio dismissed a bill filed for relief against a judgment rendered on an appearance of an attorney without authority, on the express ground that the remedy should be sought by application to the court in which the judgment was rendered. It seems to us that upon considerations, both of principle and policy, relief, except in special cases, should be sought on motion in the action. It is the established rule where courts of law and equity are separated, that equity will not grant its aid where there is a plain and adequate remedy at law. Under our system of procedure relief on motion is administered upon equitable as well as legal principles. In ordinary cases where relief is sought against a judgment on the ground that the appearance of an attorney was unauthorized, the rights of the parties can be as fully presented and as carefully adjudged on a motion as in an action. If the facts are controverted and the court is not satisfied upon the affidavits and papers presented as to what the real facts are, it may refer the matter for the purpose of taking further evidence, and may require the parties to submit to an oral examination or cross-examination. Code Civ. Pro., § 1015. The court, on a motion, possesses, indeed, all the substantial powers in conducting an investigation which formerly appertained to the chancellor. The remedy by motion is more convenient, prompt and less expensive than by action. The unbroken practice, which seems to have prevailed in this state, to seek relief in cases like this by motion and not by action, has almost the force of law, and ought, we think, to be followed unless special circumstances exist which may render that remedy inadequate or incomplete. Ho such special circumstances existed in the present case, and we are therefore of opinion, notwithstanding the observations of Grrover, J., in his dissenting opinion in
 
 Brown
 
 v.
 
 Nichols,
 
 that the order below cannot be sustained on the ground that it was discretionary with the court to remit the appellant to a remedy by action.
 

 In disposing of this appeal it must, we think, be assumed, upon the papers presented on the motions, that the appellant Chase was neither served with process in the action nor authorized Mr. Whiting to appear for him, and also that he had no knowledge that such an action had been brought, nor any notice thereof until February, 1881, after the rendition of the judgment of the special term. These facts are specially and particularly alleged
 
 *73
 
 in the moving papers, and are in no respect controverted Sy the opposing affidavits. The other circumstances are also consistent with the claim made. Chase was a non-resident of the state during the whole period of the litigation. That he was never served with process is conceded. Mr. Whiting, on the occasion of the interview with Mr. Dabney, the attorney emplojmd by Mr. Chase, after he had been notified of the judgment rendered against him, admitted that he was not retained by Mr. Chase personally, and that he appeared for him by direction of Mr. Page, one of the co-defendants. Mr. Chase did not know Mr. Whiting and never saw him prior to the rendition of the judgment. lie swears that he had no knowledge that Vilas made any claim against him. He knew that Vilas claimed title to rolling stock of the Plattsburgh & Montreal Eailroad Company, which if established in the foreclosure action would, under the agreement between him and the receiver, be converted into a lien on the property. In the present action Vilas claimed that Page, Butler and Chase were jointly liable to him for the lien debt, but this claim was adjudicated adversely to him by the judgment of this court. 106 N. Y., 440. There is no suggestion that Vilas ever asserted any personal claim against Chase except by and through the complaint in this action. The relations between Chase and Page at the time of the alleged retainer by the latter of Whiting to appear for Chase were hostile and so continued. But Page had an interest, in case the claim of Vilas for a personal judgment against the individual defendants should be established, that Chase should be bound by the judgment. The Delaware & Hudson Canal Company (the real party opposing these motions) not only omitted to controvert any of the statements in the moving papers on the subject of the unauthorized appearance, but made no request for a reference to ascertain the facts nor that it might be afforded an opportunity to cross-examine Chase or the other affiants on the subject.
 

 The main question of law respects the relief, if any, to which Chase is entitled against the judgment by reason of the unauthorized appearance of Mr. Whiting. It is obvious that the court acquired no jurisdiction to render a personal judgment against Chase, unless the appearance, although unauthorized, conferred jurisdiction, or unless the authority of the attorney to appear is conclusively .presumed from the fact of appearance. The case of
 
 Denton
 
 v.
 
 Noyes, supra,
 
 held that a domestic judgment rendered by a court of general jurisdiction against a party who had not been served with process, but for whom an attorney of the court had appeared, though without authority, was neither void nor irregular. The doctrine of the prevailing opinion in that case encountered a vigorous opposition from one of the judges at the time, and it is not too much to say that the reasoning upon which it rests has frequently been criticized by j udges, and the justice of the rule denied. But it has been followed, and must be regarded as the law of the state.
 
 Hamilton
 
 v. Wright, 37 N. Y., 502;
 
 Brown
 
 v.
 
 Nichols,
 
 42 id., 26.
 

 The courts in this state, while holding that strictly domestic
 
 *74
 
 judgments rendered against a party not served, but for whom an attorney appeared without authority, cannot be assailed on„this ground when coming in question collaterally, nevertheless grant relief, on motion, either by setting aside the judgment absolutely, or by staying proceedings, and permitting the party to come in and defend the action. Where the attorney is insolvent, the judgment will be absolutely vacated and set aside.
 
 Campbell
 
 v. Bristol, 19 Wend., 101. In other cases the proceedings will be stayed, and the party permitted to come in and defend. The latter relief was granted in
 
 Denton
 
 v. Noyes,
 
 supra.
 
 In the present case no relief whatever was granted, but the application therefor was denied absolutely. Even if the judgment against Chase is governed by the rule established in
 
 Denton
 
 v. Noyes,
 
 supra
 
 (which, for reasons which will be stated, does not, we think, apply), then it would seem that the court erred in not denying relief. It is shown by the affidavit of the son of Mr. Whiting, which is uncontradicted, that his father’s estate, at the time of his death in 1885, was entirely inadequate to pay the amount of the judgment against Chase. It is not expressly shown what the pecuniary condition of Mr. Whiting was in 1881, when the judgment against Chase was entered. But assuming that Mr. Whiting had sufficient pecuniary ability at that time to respond in damages for the amount of the judgment, that, we think, is not controlling, to prevent relief on an application made after he became insolvent, provided it was made before the rights of the party procuring the judgment had changed to his prejudice. The party against whom the judgment was rendered would still be entitled, we think, to apply for and obtain relief by the vacation of the judgment. The plaintiff has no equity which "entitles him to claim that the party injured should have been prompt to pursue and obtain a remedy by action against the attorney for damages, and thereby enable the plaintiff to have the benefit of the judgment. Moreqver, the judgment of the court in the 106 N. Y., in the present action, conclusively determined as between the plaintiff and the defendants Page and Butler that the latter had never assumed any personal obligation for the lien debt. If this judgment was not technically an estoppel of record as to the same question arising between the ¡fiaintiffs and Chase, on the ground that he was not a party to the appeal, nevertheless it furnishes a strong reason for granting him absolute and final relief on this application, even if the estate of Mr. Whiting was solvent, instead of granting limited relief by a stay of proceedings merely with a right to come in and defend the action, thereby subjecting Chase -to the trouble and expense of a new trial which could have but one result.
 

 We have so far considered the case upon the assumption that it is governed "by
 
 Denton
 
 v.
 
 Noyes
 
 and the cases following it. But we are of opinion that a radical distinction exists between the cases hitherto decided and the present one, which prevents the application of the principle that in the case of a domestic judgment strictly, a party not served, but for whom an unauthorized
 
 *75
 
 appearance was entered by an attorney, cannot on these grounds assail the judgment for want of jurisdiction.
 

 The distinction adverted to lies in the fact that in the cases hitherto decided in this state arising on domestic judgments, the judgment rendered was against a citizen of the state who was within the jurisdiction, while in the present case the defendant in the judgment was at all times a non-resident and out of the jurisdiction. It is well settled that in an action brought in our courts on a judgment of a court of a sister state, the jurisdiction of the court to render the judgment may be assailed by proof that the defendant was not served and did not appear in the action, or where an appearance was entered by an attorney, that the appearance was unauthorized, and this even where the proof directly contradicts the record.
 
 Starbuck
 
 v. Murray, 5 Wend., 148;
 
 Shumway
 
 v. Stillman, 6 id., 447;
 
 Kerr
 
 v.
 
 Kerr,
 
 41 N. Y., 272; Rapallo, J.,
 
 Ferguson
 
 v.
 
 Crawford,
 
 70 id., 257.
 

 The same rule is held elsewhere, and is in consonance with the constitutional obligation under the constitution of the United States as to the faith and credit to be given by one state to the judgments of other states.
 
 Gilman
 
 v.
 
 Gilman,
 
 126 Mass., 26;
 
 Wright
 
 v.
 
 Andrews,
 
 130 id., 149;
 
 Thompson
 
 v.
 
 Whitman,
 
 18 Wall., 457 ;
 
 Knowles
 
 v.
 
 Gas Light Co.,
 
 19 id., 58.
 

 There is undoubtedly a logical difficulty in applying a different rule, as our courts do, in an action upon a domestic judgment, where the only thing giving color of jurisdiction ‘over the person, is an unauthorized appearance by an attorney. The different rule in the two cases has been supposed to rest on the unreasonableness of compelling a party against whom judgment has been rendered in another state on an unauthorized appearance by an attorney to go to the foreign jurisdiction to attack it. See Dillon, J., in
 
 Harshey
 
 v.
 
 Blackmarr,
 
 20 Iowa, 161. The same reason, in justice, would seem to apply in case of domestic judgment against a non-resident of the state, and besides it may be said that a non-resident, not served with process and for whom an unauthorized appearance had been entered in the foreign jurisdiction, would be much less likely to become apprised of the pendency of the action than if he had been a resident.
 

 In
 
 Nordlinger
 
 v.
 
 De Mier,
 
 54 Hun, 278; 27 N. Y. State Rep., 16, the general term of the supreme court, in the first department, Barrett, J., writing the opinion, set aside an unauthorized appearance entered for a non-resident defendant on the precise ground that the rule in
 
 Denton
 
 v.
 
 Noyes
 
 did not apply in such a case.
 

 Bodurtha
 
 v.
 
 Goodrich,
 
 3 Gray, 508, was the case of an unauthorized appearance by an attorney for Bodurtha, a non-resident of Massachusetts, in an action brought in the latter state. The court reversed the judgment on writ of error, Shaw, Ch. X, say-' ing: “It would certainly be very strange if an inhabitant of another state could thus be bound by a judgment given and recorded by a court having no jurisdiction, without any act or default of such party.” In
 
 Wiley et al.
 
 v.
 
 Pratt,
 
 23 Ind., 628, the court, in a case of a domestic judgment where the party had not been served, but for whom an unauthorized appearance had
 
 *76
 
 been entered, adopted substantially the English rule as announced in
 
 Bayley v. Buchland,
 
 1 Welsby, H. & G., 1, that where a defendant had been served and an unauthorized appearance entered, the judgment would not be set aside, but if he had not been served it would be. Eay, Oh. J., after stating what he conceived to be the true rule, but excepting from it the case of a domestic judgment against a non-resident not within the jurisdiction, said, “Where the defendant has not been within the jurisdiction of the court it would not be just to compel him to come under that jurisdiction and establish his defense to the action in order to claim relief from a judgment obtained without notice, and therefore the relief granted here must be absolute immunity from the judgment.”
 

 We are bound under our decisions to follow the doctrine of
 
 Denton
 
 v.
 
 Noyes
 
 in cases where it is strictly applicable. It is as to such cases
 
 stare decisis^
 
 But we are not disposed to extend the doctrine of that case to cases fairly and reasonably distinguishable, and the fact that a defendant against whom a judgment has been obtained here upon an unauthorized appearance by an attorney, and who was not served, was a non-resident during the pendency of the proceedings, does, we think, constitute such a distinction as renders the rule in that case inapplicable.
 

 Upon the }3oint made by the Delaware & Hudson Canal Company that the defendant Chase is precluded from relief by his loches, but little heed to be said. The Delaware & Hudson Canal Company acquired its interest in the property of the Plattsburgh & Montreal Eailroad Company in 1872. It took from Page his individual guaranty against the claims of third persons on the property, including the claim of Yilas. Neither Butler or Chase were parties to the guaranty. In 1881, soon after the judgment against Chase was rendered, it was apprised of his claim that he had" not been served in the action, and that the appearance of Whiting was unauthorized. When Yilas sued Chase on the judgment in Massachusetts the latter promptly disavowed the jurisdiction of the court to render the judgment. Yilas, after the lapse of about two years, -suffered a nonsuit, inferribly because he was unable to establish the jurisdiction, and he tools: no further proceedings to collect the judgment, but after the final decision in this court he assigned the judgment against Chase to the Delaware & Hudson Canal Company, on being paid the amount of the lien, adjudged in the action, against the property in the possession of that company. The company took the assignment with full notice of the equities of Chase. The delay of Chase has not, so far as appears, changed the situation of either Yilas or the Delaware & Hudson Canal Company to the prejudice of either, and under such circumstances the plea of
 
 loches,
 
 as was said in
 
 Platt
 
 v.
 
 Platt,
 
 58 N. Y., 646, will not be readily listened to, and ought not, we think, to be listened to in this case to uphold a judgment which, as was held by this court on the appeal of the co-defendants of Chase, standing in the same position with him, had no legal foundation.
 

 We think the motions in this case should have been granted, and the judgment and appearance vacated.
 

 
 *77
 
 The orders of the special and general terms should, therefore, he reversed and the motions granted, with costs.
 

 All concur.
 

 Reversing 29 N. Y. State Rep., 664.