Gibson, Dunn & Crutcher LLP v Koukis (2023 NY Slip Op 01863)

Gibson, Dunn & Crutcher LLP v Koukis

2023 NY Slip Op 01863

Decided on April 11, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 11, 2023

Before: Webber, J.P., Kern, Oing, Friedman, González, JJ.

Index No. 160471/16 Appeal No. 17477 Case No. 2021-04374 

[*1]Gibson, Dunn & Crutcher LLP, Plaintiff-Appellant-Respondent,
v
George Koukis, Defendant-Respondent-Appellant, Joseph D'Anna et al., Defendants.

Gibson, Dunn & Crutcher LLP, New York (Seth M. Rokosky of counsel), for appellant-respondent.
Aronauer & Yudell LLP, White Plains (Joseph Aronauer of counsel), for respondent-appellant.

Order, Supreme Court, New York County (David B. Cohen, J.), entered September 15, 2021, which, to the extent appealed from, granted so much of defendant George Koukis's motion to vacate the default judgment and dismiss the complaint on the grounds that the appearance of counsel was unauthorized, denied so much of the motion as based on lack of jurisdiction, and set the matter down for a traverse hearing to determine whether service was proper pursuant to CPLR 308(2), and granted Koukis's motion to quash postjudgment subpoenas, and denied plaintiff's cross motion to permit alternate service of the subpoenas as premature, modified, on the law, to vacate the default judgment and grant dismissal of the complaint based on lack of jurisdiction, and otherwise affirmed, without costs.
The facts, as relevant to this appeal are as follows. Defendants Joseph D'Anna, Elio D'Anna Sr., Elio D'Anna Jr., Elia D'Anna, and George Koukis are founders or shareholders of Be In, Inc. (Be In), a New York corporation with its principal place of business at 725 Fifth Avenue in New York. Defendants are all domiciled in Europe.
Nonparty Alessandro Nomellini is the executive director and chief financial officer of Be In. According to Nomellini, he served as "the D'Annas' point person" for all United States-based Be In operations and was the only person with access to Be In's bank accounts. Nomellini apparently also owns and operates a United States-based offshoot of the European School of Economics, ESE NYC, Inc., a network of for-profit schools run by Elio D'Anna, Sr. ESE NYC, Inc, does business under the name Legacy Business School, which maintains its offices in the same space as Be In on Fifth Avenue in New York.
In January 2013, Nomellini, on behalf of Be In, retained plaintiff Gibson Dunn to represent Be In with respect to litigation in California. Gibson Dunn's engagement letter was addressed to and executed by Nomellini as "Chief Financial Officer and Executive Director, European School of Economics, 725 Fifth Avenue, 19th Floor, New York, NY." Apparently, legal services went unpaid, causing Gibson Dunn and Be In to enter into a settlement agreement by which it was agreed that all notices were also to be sent by mail to "Alessandro Nomellini, Be In Inc. C/O European School of Economics, 725 Fifth Avenue, 19th Floor, New York, NY." The parties eventually engaged in arbitration, and the California Superior Court entered judgment confirming Gibson Dunn's arbitration award (the California judgment). In August 2016, Gibson Dunn domesticated the California judgment in New York Supreme Court. During a postjudgment deposition, Nomellini testified that defendants had stopped funding the company and had drained the company's bank accounts so that the company was insolvent. According to Nomellini, Elio Jr. had transferred his equity interest to Elio Sr. for no consideration, and other family members had transferred their shares to Joseph for no consideration, leaving [*2]Joseph with an 85% interest and Koukis with 15% of the remaining shares.
In December 2016, Gibson Dunn commenced this action to enforce the existing judgment against Be In, asserting claims of fraudulent conveyance against Be In and defendants and alter ego/misuse of corporate form against defendants. Gibson Dunn alleged, among other things, that defendants had undercapitalized Be In, had made fraudulent transfers with the intent to hinder Gibson Dunn's collection efforts, and had abused the corporate form by holding no board meetings, maintaining no financial records or office space, and by conveying Be In's shares for no consideration and moving assets into personal bank accounts. Gibson Dunn effectuated service on defendants by delivering the summons and complaint to Nomellini at 725 Fifth Avenue, New York, and then mailing copies to the same address.
On November 17, 2017, Gibson Dunn moved for a default judgment. In connection with the motion for a default judgment, the parties subsequently submitted an executed stipulation whereby Gibson Dunn allowed defendants until January 11, 2018 to respond to the default motion, and defendants agreed to "not raise and hereby waive any defenses based on service of process or lack of personal jurisdiction." The stipulation was signed by Gil Santamarina, attorney for the "[D]efendants."
Gibson Dunn's motion for a default judgment against all defendants, including Koukis, was granted. Koukis moved to vacate the default, arguing that Santamarina was not authorized to act on his behalf, that service was improper, and that even if proper, there was no personal jurisdiction. The motion court found that Santamarina lacked authority to act on Koukis's behalf. However, it found personal jurisdiction pursuant to CPLR 302 (a)(2).
The motion court correctly found that there was no basis to conclude that Koukis authorized Santamarina to appear and waive all jurisdictional defenses on his behalf (see Amusement Sec. Corp. v Academy Pictures Distrib. Corp., 251 App Div 227, 229 [1st Dept 1937]). On December 16, 2019, Koukis emailed Santamarina, with a copy to his attorney, specifically stating that "I have not authorized you to represent me in any legal or other matters." Koukis also averred that he never communicated with Santamarina and that he never represented him, and there is no indication in the record that Koukis was even aware of Santamarina for any significant time prior to his December 16, 2019 email. The two November 2019 emails referenced by the dissent were not from or to Santamarina and made no mention of any representation by Santamarina.
We find, however, that there are insufficient allegations in the complaint that Koukis participated in the allegedly fraudulent conveyance to hinder legitimate creditors such as plaintiff, which warranted the exercise of jurisdiction pursuant to CPLR 302(a)(2). The complaint is devoid of any specific allegations involving Koukis. There are no allegations as [*3]to which Be In assets were transferred to Koukis and/or when they were transferred (see CIBC Mellon Trust Co. v HSBC Guyerzeller Bank AG, 56 AD3d 307, 308-309 [1st Dept 2008]).
Supreme Court correctly concluded that the subpoenas must be quashed because they were not served in the manner of a summons (CPLR 2303[a]).
All concur except Friedman, and González, JJ. who
dissents in part in a memorandum by Friedman, J. as follows:

FRIEDMAN, J. (dissenting in part)
 

The primary issue on this appeal is whether the default judgment entered against defendant George Koukis in July 2019 should be vacated, and the complaint dismissed as against him, on the ground that Koukis — a domiciliary of Switzerland — was not subject to Supreme Court's jurisdiction. Plaintiff is a law firm that previously represented a failed startup corporation named Be In, Inc. (BII) in arbitration against Google. Plaintiff commenced this action against BII's shareholders — including Koukis, who is an indirect 15% shareholder in the company — to recover unpaid fees that it earned in representing BII.
Plaintiff argues, among other things, that Koukis was subject to Supreme Court's jurisdiction by virtue of a December 2017 stipulation "waiv[ing] any defenses based on service of process or lack of personal jurisdiction" that was executed by Gil Santamarina, Esq., an attorney who appeared in this action claiming to represent all defendants in opposition to plaintiff's motion for entry of a default judgment. Koukis has submitted a declaration denying that he ever authorized codefendant Joseph D'Anna (J. D'Anna) to retain Santamarina to represent him and further denying that he ever communicated with Santamarina at any time before December 16, 2019, when Koukis sent Santamarina an email stating, "I have not authorized you to represent me in any legal or other matters." Indeed, Koukis avers that he was not even aware of Santamarina for any significant period of time prior to his December 16, 2019 email. The majority accepts this argument, concluding that the present record presents "no basis to conclude that Koukis authorized Santamarina to appear and waive all jurisdictional defenses on his behalf." On this ground, the majority modifies the order appealed from to grant the motion to vacate the default judgment and to dismiss the complaint.[FN1]
I respectfully disagree with the majority's assertion that there is "no basis" in the record for an inference that Santamarina had authority to represent Koukis in this action. The majority overlooks certain November 2019 emails that plainly raise an issue of fact in this regard. That issue of fact should be resolved by a hearing pursuant to CPLR 2218.
On November 6, 2019, Koukis sent an email to J. D'Anna, the investor in BII who had retained Santamarina, criticizing J. D'Anna for managing the defense of this action and of the arbitration of the earlier dispute with Google, in which plaintiff had [*4]represented BII, "without any consultation with the shareholders." In response, J. D'Anna sent Koukis an email later that day, stating in pertinent part:
"It is with surprise that I read your email, as you have been aware of this US proceeding[] [i.e., the instant action] for well over a year, and we've had plenty of discussions with both yourself and Julian on why these proceedings have been issued against [BII] and its shareholders and what we are doing to defend them."[FN2]
The next day, November 7, 2019, J. D'Anna sent Koukis another email concerning the efforts to obtain vacatur of the default judgment, stating in pertinent part:
"But what you are now asking for — to write a letter to the court in which I state that you were unaware of the US proceedings — would be a lie and subject to perjury; and I cannot do it. You have been fully aware of this action and either you take your own legal representation and decide by your own means how to better defend your position independently from the Company [BII], or you stay with the Company's appointed attorney and wait for the final resolution of the appeal — whatever the outcome."
In my view, the foregoing statements from J. D'Anna's emails to Koukis, while certainly not proving that Koukis had authorized Santamarina to represent him in this action, suffice to raise a triable issue of fact as to whether Koukis had given such authority, whether expressly or through knowing acquiescence in the representation as it continued through an extended period of time. This factual issue cannot be resolved on the present record and should be tried by the court or by a referee pursuant to CPLR 2218. In fact, this is precisely what was done in the case on which the majority relies in granting Koukis relief. In Amusement Sec. Corp. v Academy Pictures Distrib. Corp. (251 App Div 227 [1st Dept 1937]), after noting that a defendant who was not otherwise subject to the jurisdiction of the court could not "be bound by acts of attorneys in this jurisdiction who, as it is claimed, essayed to appear for him without the slightest authority" (id. at 230), this Court further opined:
"However, as plaintiff contends that there is proof available to establish that Fitelson & Mayers [a law firm] were specifically authorized to appear for Victor Halperin [the appealing defendant], we believe that opportunity to submit such proof, at which the attorneys, Fitelson & Mayers, may be called upon to give testimony, should be afforded plaintiff by a hearing before a referee. A full inquiry into all the circumstances surrounding the alleged inadvertent appearance may thus be had" (id.).
In view of the emails from J. D'Anna quoted above, I do not understand how the majority can resolve the issue of Santamarina's authority as a matter of law on the present record.[FN3]
In accord with our holding in the Amusement Sec. Corp. case, I believe that we should modify the order appealed from to grant Koukis's motion only to the extent of directing that [*5]the issue of whether Santamarina had the authority to represent Koukis be tried by the court or by a referee, pursuant to CPLR 2218, and that the parties be afforded a reasonable opportunity for discovery before that hearing (cf. Suslow v Rush, 161 AD2d 235, 235 [1st Dept 1990] [the issue of an attorney's authority to enter into a binding out-of-court settlement is "an appropriate subject for an evidentiary hearing"]).[FN4]
Finally, I concur with the majority insofar as it affirms the granting of Koukis's motion to quash the subpoena. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
ENTERED: April 11, 2023

Footnotes

Footnote 1: Supreme Court granted Koukis's motion only to the extent of directing a traverse hearing to consider whether he was properly served with process through an alleged agent in New York in December 2016, based on the court's view that Koukis was subject to long-arm jurisdiction under CPLR 302(a)(2). In view of the allegations of the complaint, I agree with the majority that Koukis is not subject to jurisdiction under CPLR 302(a)(2) and, therefore, that there is no need for a traverse hearing to determine whether the alleged agent on whom process was served was authorized to accept service on Koukis's behalf.

Footnote 2: If true, J. D'Anna's statement in the November 6, 2019 email that, as of that date, Koukis had been aware of this action "for well over a year" (i.e., since before November 2018) indicates that Koukis had been aware of this action long before the default judgment was entered against him in July 2019.

Footnote 3: The majority dismisses the November 2019 emails I have quoted on the ground that they "were not from or to Santamarina and made no mention of any representation by Santamarina." This response misses the mark. That Santamarina was neither the sender nor a recipient of the emails is beside the point, as the pertinent questions are whether Koukis knew of Santamarina's representation from J. D'Anna (who had retained Santamarina) and, assuming that Koukis had such knowledge, whether he conveyed to J. D'Anna approval of that representation, either expressly or implicitly. Stated otherwise, Koukis did not have to be in direct contact with Santamarina to authorize the representation. The majority's other assertion — that the emails "made no mention of any representation by Santamarina" — is incorrect. J. D'Anna's November 7 email states that, in this action, Koukis had a choice between finding his own lawyer "or . . . stay[ing] with the Company's appointed attorney." The phrase "the Company's appointed attorney" could refer only to Santamarina. Certainly, if Koukis were to take the position that the phrase refers to some attorney other than Santamarina (which he has not done), it would be his burden to come forward with evidence to prove that (see Pruss v Infiniti of Manhattan, Inc., 180 AD3d 163, 168 [1st Dept 2020] [a client seeking to be relieved of the effect of counsel's actions "must demonstrate that the attorney was without authority of any sort"] [internal quotation marks omitted], lv dismissed 35 NY3d 1001 [2020]). However, if the majority insists that only a reference to Santamarina by name counts, there is indeed such a reference at a later point in J. D'Anna's November 6 email, where he tells the other recipient of the email (Elio D'Anna) to speak to "Mr. Santamarina" about having himself dismissed from the case. Needless to say, in addressing the issues presented, the burden of proof is upon Koukis, who seeks to be relieved of the default judgment. 

Footnote 4: I note that, if Santamarina did have authority to represent Koukis in this action, Koukis would be bound by Santamarina's stipulation to waive jurisdictional defenses under the doctrine of apparent authority, even if that stipulation exceeded the attorney's actual authority (see Hallock v State of New York, 64 NY2d 224, 231-232 [1984]).